**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

NANCY J. POPE,

                Plaintiff,

v.                                                Case No.  5:04-cv-508-Oc-10GRJ

MUNROE REGIONAL MEDICAL
CENTER,

                Defendant.
_____

**REPORT AND RECOMMENDATION[1]**

Pending before the Court is Defendant's Motion To Compel Arbitration And Stay Judicial Proceedings.  (Doc. 5).  Plaintiff, who is proceeding *pro se*, has not filed a response and the time for doing so has passed.  Therefore, the matter is ripe for review.  For the reasons discussed below, Defendant's Motion to Compel Arbitration And Stay Judicial Proceedings (Doc. 5) is due to be **GRANTED**.

**I.  BACKGROUND**

This action arises out of Plaintiff, Nancy Pope's employment with Defendant, Munroe Regional Medical Center from July 1998 to October 2003.[2]  On October 1,

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] These dates are taken from Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings (Doc. 5).  Plaintiff does not allege specific dates in her Amended Complaint.  However, these dates are not inconsistent with Plaintiff's pleadings.  Plaintiff alleges in the Charge of Discrimination, which is attached to her Amended Complaint, that she worked for Defendant for five years and that the discrimination took place between June 16, 2003 and December 31, 2003.

2000, Defendant adopted a Dispute Resolution Process ("DRP").[3] The DRP outlines a four option process for the resolution of disputes between Defendant and its employees. The four options include: (1) "The Open Door Option"; (2) "The Internal Support Option"; (3) "The Mediation Option"; and (4) "The Arbitration Option."  Employees are permitted to use the options in any order and may go directly to the arbitration option if the dispute concerns "a legally protected right such as age, race or sex discrimination or protection against sexual harassment."  The DRP requires both the Defendant and its employees to use the process to resolve all workplace disputes.  The DRP provides in pertinent part:

> Munroe Regional Medical Center has adopted this four-option process as the exclusive means of resolving workplace disputes for legally protected rights.  In adopting this process, the Medical Center agrees also to use this process to resolve all workplace disputes.  An associate who accepts or continues employment with the Medical Center, by accepting compensation for employment, agrees to resolve all employment-related legal claims against Munroe Regional Medical Center or any other entity, associate, client, customer or joint employer through this process rather than through the court system.  If an associate files a lawsuit against the Medical Center or any of the parties listed above, the Medical Center will ask the court to dismiss the lawsuit and refer it to the Dispute Resolution Process.  This provision applies to any workplace dispute, regardless of when it arises, including disputes that arise after an associate leaves Munroe Regional Medical Center.

Additionally, the DRP states that no signature is required; the DRP automatically covers any individual who accepts employment with Defendant and continues that employment after the effective date of October 1, 2000.  On or about December 27, 2000, Plaintiff

---

[3] *See* Doc. 5-2, Exhibit 1.

acknowledged that she attended an in-house program on the DRP and that she received a copy of the DRP Guidebook.[4]

On or about November 15, 2004, Plaintiff filed this action alleging that during the course of her employment Defendant discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA").[5]  On February 17, 2005, Defendant wrote a letter to Plaintiff requesting that she voluntarily dismiss her lawsuit based on the DRP.[6]  In this letter, defense counsel noted "we understand that you and the Hospital are actively engaged in selecting an arbitrator and setting a date for an arbitration hearing to resolve your outstanding issues with Munroe."  On June 3, 2005, Defendant filed the instant motion (Doc. 5) requesting that the Court compel Plaintiff to arbitrate the claims in this case pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§1-16.

## II. DISCUSSION

The FAA mandates judicial enforcement of a wide range of written arbitration agreements.[7]  Section 2, the coverage provision, provides that any written agreement to arbitrate "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable" under the FAA "save upon such grounds as exist at law or

---

[4] *See* Doc 5-2, Exhibit 2.

[5] Plaintiff filed her original Complaint (Doc. 1) on November 15, 2004 and then filed an Amended Complaint (Doc. 3) on November 19, 2004.

[6] *See* Doc. 5-2, Exhibit 3.

[7] *See* Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).

in equity for the revocation of any contract." [8]  Courts routinely have enforced arbitration agreements in the employment context.[9]

While questions of arbitrability pursuant to the FAA are to be generously construed in favor of arbitration, the Court must decide certain "gateway matters" before compelling arbitration.[10]  These "gateway matters" include (1) whether a valid written agreement to arbitrate exists; (2) whether the issue sought to be arbitrated is arbitrable under the agreement; and (3) whether the right to arbitration was waived.[11]

The FAA requires courts "to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[12]  It necessarily follows that the parties can only be compelled to arbitrate when they have agreed to do so. Whether the parties formed a valid agreement to arbitrate is a matter governed by principles of state

---

[8] 9 U.S.C.A. §2.

[9] *See e.g.*, Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255 (11th Cir. 2003)(employee's Title VII religious discrimination claim subject to arbitration); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000)(employee's claims of race discrimination and retaliation subject to arbitration); Bender v. A.G. Edwards, Inc., 971 F.2d 698 (11th Cir. 1992)(employee's Title VII sexual harassment claim against stock brokerage subject to arbitration); *see also*, Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-23 (2001)(noting "real benefits" to arbitration in the employment context).

[10] *See* Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003).

[11] *See id.*; Home Quality Mgmt, Inc. v. Ace American Insur. Co., 2005 WL 1607885, *1 (S.D. Fla. July 1, 2005)(noting the inquiry is the same under Florida and federal law);  Florida Farm Bureau Insur. Companies v. Pulte Home Corp., 2005 WL 1345779, *3 (M.D. Fla. June 6, 2005).

[12] Volt Information Servs., Inc. V. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000).

contract law, in this case the contract law of Florida.[13]  Here, the necessary elements of a contract -- offer, acceptance and consideration -- are all present.[14]

The DRP is an offer by Defendant for its employees to be bound by the terms set forth in the policy.  The DRP Guidebook specifically states that employees may accept this offer by continuing their employment beyond October 1, 2000.  It is undisputed that Plaintiff received notice of the DRP and that she continued to work beyond the October 1, 2000 effective date.   Thus, the question is whether continued employment past a certain date can constitute acceptance of a mandatory arbitration provision.

The Court has been unable to find any Florida case (nor have the parties cited one) specifically addressing this issue.[15]   However, it is a generally accepted legal proposition that an offer can be accepted by acts.[16]   Here, the DRP unambiguously notified Plaintiff that by continuing employment and accepting compensation she was agreeing to resolve all employment-related legal claims through the DRP.   In other words, the DRP advised Plaintiff how she could accept the offer.   As such, by continuing her employment and accepting payment, Plaintiff accepted Defendant's offer

---

[13] Florida Farm Bureau Insur. Companies v. Pulte Home Corp., 2005 WL 1345779, *4 (M.D. Fla. June 6, 2005).

[14] *See e.g.*, St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla. 2004); Mettler, Inc. V. Ellen Tracy, Inc., 648 So.2d 253, 255 (Fla. App. 1994).

[15] However, courts in several other jurisdictions have considered this issue and held that continued employment constitutes acceptance of a mandatory arbitration provision. *See e.g.*, May v. Higbee Co., 372 F.3d 757, 764-65 (5th Cir. 2004)(applying Mississippi law); Tinder v. Pinkerton Security, 305 F.3d 728, 730-34 (7th Cir. 2002)(applying Wisconsin law); Caley v. Gulfstream Aerospace Corp., 333 F.Supp.2d 1367, (N.D. Ga. 2004)(applying Georgia law); Gutman v. Baldwin Corp., 2002 WL 32107938, *3-*4 (E.D. Pa. Nov. 22, 2002)(applying Pennsylvania law).

[16] *See e.g.*, Bullock v. Harwick, 30 So.2d 539 (Fla. 1947)(holding that acceptance may be in writing, by parol, or by acts).

and agreed to be bound by the provisions of the DRP. Additionally, the parties' agreement is supported by sufficient consideration as both Plaintiff and Defendant are bound to submit all employment-related disputes to the DRP.[17] Accordingly, the DRP constitutes a valid written agreement to arbitrate.

The Court must next consider whether Plaintiff's claims are arbitrable under the DRP. The DRP explicitly applies to "all employment-related legal claims against [Defendant] or any other entity, associate, client, customer or joint employer." Plaintiff's ADA and FMLA claims are clearly covered by this broad and unambiguous provision and as such, they must be resolved through the DRP.[18] That Plaintiff's claims are based on federal statutes does not change the result. Statutory claims can be subject to mandatory arbitration and the arbitration agreement need not specifically list every federal or state statute it purports to cover.[19] Accordingly, Plaintiff's claims are arbitrable under the DRP.

Moreover, there is no suggestion that Defendant waived its right to arbitration. While Defendant filed its motion to compel arbitration almost six months after Plaintiff filed her Amended Complaint, this fails to establish waiver. Waiver is established only if the totality of the circumstances demonstrate that the party acted inconsistently with its

---

[17] *See* Lemmon v. Lincoln Property Co., 307 F.Supp.2d 1352, (M.D. Fla. 2004); Kinko's Inc. v Payne, 901 So.2d 354, 356 (Fla. DCA 2005).

[18] *See* Anders v. Hometown Mortgage Services, Inc., 346 F.3d 1024, 1028 (11th Cir. 2003); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000).

[19] *See* Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000).

right to arbitrate and, by doing so, in some way prejudiced the other party.[20]  Any doubts concerning whether waiver has occurred should be resolved in favor of arbitration.[21] Here, there is no evidence suggesting that Defendant substantially invoked the litigation process prior to demanding arbitration or that Plaintiff suffered any prejudice.[22] Accordingly, no waiver occurred.

### III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Compel Arbitration (Doc. 5) be **GRANTED**.  Additionally, rather than staying these proceedings, the Clerk should be directed to administratively close the file with the right of Plaintiff to request that the case be reopened after arbitration in the event Plaintiff wishes to enforce any arbitration award.

**IN CHAMBERS** in Ocala, Florida on this 1st day of August, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:

The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[20] *See* Ivax Corp. V. B. Braun of America, Inc., 286 F.3d 1309, 1315-16 (11th Cir. 2002).

[21] *See* Home Quality Management, Inc., 2005 WL 1607885, *3 (S.D. Fla. July 21, 2005).

[22] Plaintiff filed her original complaint (Doc. 1) on November 15, 2004 and her amended complaint (Doc. 3) on November 19, 2004. On January 25, 2005, defense counsel executed a waiver of service of summons form which was not returned to the Court until February 25, 2005 (Doc. 4). On February 17, 2005, defense counsel sent a letter to Plaintiff requesting that she voluntarily dismiss the lawsuit because it is barred by the DRP. (Doc. 5-2, Exhibit 3). In this letter, defense counsel noted "we understand that you and the Hospital are actively engaged in selecting an arbitrator and setting a date for an arbitration hearing to resolve your outstanding issues with Munroe." Then, on June 3, 2005 Defendant filed its Motion to Compel Arbitration and Stay Judicial Proceedings. (Doc. 5). Thus, there is no evidence before the Court to suggest that Defendant took any actions inconsistent with its right to arbitrate.